argument now in the case of United States against Thompson. Mr. Skaggs. May it please the court, good morning. My name is Ethan Skaggs. I'm an assistant federal public defender with the Southern District of Illinois. Marcus Thompson, by all accounts, is a car thief and a guy that runs from the police. It started when he was a teenager and went on into his early years. But while he was in prison or incarcerated, he came up with this idea that maybe I could make some money running some prostitutes, being a pimp. And that left him to one day, while he's driving through one of the little towns right next to East St. Louis, seeing a young lady, a teenage, an underage teenager, that he pulled over and said, hey, would you like to make some money modeling? Or do you want to make some money? She got in the car with him. They went on to Missouri where he met his wife and then they loaded her up and the wife and they went to several other on back page to have relations with this teenage, underage teenager. And men paid money to have sex with her. This went on for about six weeks and then she was sent home. And shortly after, the Thompsons, the husband and wife, charged here, were arrested. He also had sex with her during that time too, right? He had stated he had sex with her about five times. That's what he said when he was interviewed. When Mr Thompson pled guilty, he pled with a stipulation of facts and an agreement to plead guilty. You know, it was an open plea. There was a term set out and proposed guidelines in the agreement. The, when this goes with our first issue, this stipulation of facts parrots the statute at issue here. Pretty much follows it, saying he violated the law in that he, and then you just about fill in word for word for the statute. What it doesn't show in the stipulation of facts are the means how he got to that particular part of it. Since this, and it's important, this statute, because it's forced fraud or coercion to get the higher part of the statute, the 15 year mandatory minimum. It also would affect where your guidelines fall. Well, the factual stipulation that he signed references the fact that he assured the victim that he would help her find work as a model. Why wouldn't that alone establish that he used fraud to entice her into his plan? Well, the question becomes after he gets her in his vehicle in his truck and he said the modeling or making the money, I would submit that gets her in the truck, but that doesn't necessarily without more here, get her into engaging in to the sex acts, the commercial sex trafficking. Are you blaming her? Not at all, Your Honor. Not at all. But there is force, there could be fraud that just gets her into the truck. It doesn't mean that that fraud continued on when you look at this stipulation of facts. Well, even for... Okay, even if for some reason, his assurance that she'd be a model wasn't enough, why can't we look to the threat that was referenced in the presentence report? He didn't object to that in order to satisfy ourselves that there is a sufficient evidentiary basis for his plea, even if the threat itself wasn't referenced as a basis for the plea. We're on a plain error standard review here, so we can look at the whole... We can look at the whole record. Yes, we are. I agree, we are on a plain error, Your Honor. This was not something that was objected to in the district court. The interesting thing is that the line out of the presentence report, the minor victim indicated she was threatened by Marcus Thompson after she declined to have anal sex with a male subject and filed an escape attempt. That's the sentence verbatim. Looking at it, that's also a little vague. I mean, there are threats that are... If you look at the definition of a threat, can be something of eminence or something undesirable. When someone looks at me, not that it ever happened, but Mr. Skaggs, you're late for court again. You'll pay for that next time, which I would tell my friends... Whoever said a thing like that. The judge wasn't happy with me and he threatened to hold me in contempt. Or the simpler terms, and it's the most simplest terms, it's not really anywhere close to this case in any way, shape, or form, but just what a parent does. If you are late again coming home, I won't let you go to prom. So I point that out and that's the only line. He threatened her. There's not a lot to that. He threatened her. That could mean, if you don't do what I want you to, I won't give you any of the money. I will leave you here in Georgia to fend for yourself. All things that don't necessarily hit force. Judge, Your Honors, moving on to the next part of our argument, that is the actual sentence here. This case started out with a complaint. It asserted some very, very serious and disturbing facts in the complaint. You notice in the brief, it's referenced in the transcript. One of the things I brought up was, Judge, so we're all on the same page here, a lot of things, the facts that we initially thought aren't the facts of this case. There's stuff that was not ever brought out in relevant conduct, not brought out in the pre sentence report, or not asserted by the government. And I bring that up because, of course, right after I say that, Judge Reagan says, well, I assure you, I'm not going to consider anything outside the record. Right. We have to take him at his word, don't we? I say we normally would take him at his word, except that... And we wouldn't be raising this if there weren't some factors that suggest that perhaps that's not how it ended up happening. I mean, I'm aware of the... I think it's the Cortland, and that's where Judge Reagan had the dogfighter cases, and he had done his own sentencing memo. And this court, he repeatedly... I had one of those guys, actually, too, but he repeatedly said, I'm not holding my memo against everyone. And to be honest, I mean, I watched the sentencing, he didn't. This case, right off the bat, when we look at the comments about injecting the victim, and I admit, I missed this one, it said in district court, the comment was, there was evidence he was injecting the women with drugs. Did he inject the victim? Later on, when he's making his ruling, then it's... We're in a different situation, where he's... This one line in here, in the pre sentence report that I read, has turned into, and I find he used, threatened her with physical force. And that's not the line out of the pre sentence report. That's the only reference anywhere in this of any type of force, and Judge Reagan stepped along and said, well, I find he used physical force. And I say that, again, going back to what I started, that if you read the discovery, which he did, there were a lot of allegations in there that talked about physical force and things that the government flat out acknowledged were not corroborated. Well, he did mention that he threatened her following an attempt for her to escape, though, as well, right? Yeah, that's the one line. That's the one I read verbatim. Well, that's after the anal sex. Right, that's the first threat, but nothing described what that means. Well, I gather that... I read it as two separate incidents. She tried to escape and she refused to have anal sex. I don't know if it was two separate or not, Judge. Well, I mean, you can read it that way. And additionally, Judge... Your Honors, Judge Reagan, when he made his comments when he's making his rulings about... He called my client, Mr. Thompson, the ringleader. Now, that wasn't what was asserted by probation. They asserted that these two were equally culpable. Equally culpable. He essentially did his own objection at that point and says, I think they missed the mark. I think you're the ringleader. So you have a list of things here that show that he was going outside the record. He reviewed the discovery. He had all the stuff that the papers loved and the stuff that the case initially was charged made national news in a lot of places. So I'll thank you and I'll reserve the rest of my time for rebuttal. Certainly. Mr. Skaggs? Mike Quindle, Assistant United States Attorney... Yes, Mr. Quindle, please come up to the podium. I'm sorry. And perhaps I didn't hear properly. I thought you were recognizing me as Mr. Skaggs. Mr. Quindle, yes. Thank you. And appearing here on behalf of my colleague, Assistant United States Attorney, Daniel Kapsack. May I go right away, Your Honors, to the issue underlying the plea, the question about fraud. And thank you, Your Honor, for recognizing right away that clearly there's the circumstance of fraud in the enticing of the girl to travel with Mr. Thompson. And by the way, the wife is nowhere around at that time. And the record shows that Mr. Thompson, by his own admission, planned this while he was in prison. He wasn't in prison with his wife. He didn't pick up the girl with his wife. I don't think there can be any objection to Judge Reagan saying, well, clearly they're not equally culpable. Clearly, Mr. Thompson's the leader of this enterprise, whether ring leader or otherwise. Thank you, Your Honor, also for noting the threat. In the two instances, the refusal to have a certain type of sex and the attempt to escape. Now, I guess the objection here is, well, it doesn't say in the PSR, threat to do what? And I think it's clear that what's implied is if you're trying to get somebody to engage in what has been described historically as an unnatural sex act, a 15-year-old girl, that your threat is a threat of force. And same thing with an attempted escape. Well, what is your threat to prevent any further attempt to escape? It's a threat of some form of punishment or restraint against physical force. And, Your Honors, I'd like to actually thank my colleague, because I'm not a prosecutor... Counsel, please refrain from talking unless you are at the podium. I'm very sorry. I forget the recording system. I just wanted to thank my colleague, because he brought the statute with him, and I didn't have it. And he graciously gave me a copy of the statute. And the statute, of course, includes force, fraud, and coercion. And it defines coercion. So I think we can dispose of this question about the sufficiency of the law. You've already identified the implied threat of force. I think that also goes to the judge saying threatened with physical force. Well, that's a natural inference from the facts. So I don't think that indicates any bias on the intention of the judge. But, and again, I was unfamiliar with this statute, but coercion is defined. The indictment identifies coercion. The stipulation identifies coercion. And coercion means, excuse me, I'm getting new to this requirement, the term coercion means, paragraph B, any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in physical harm, excuse me, serious harm, or physical restraint against any person. Well, clearly everything that's outlined in both the PSR and its brief description of what the defendant said when interviewed, what the victim said when interviewed, there's some additional things in there also, which would be the sufficient basis for the entry of judgment on the plea. I also learned about 11b.3, and that if the court doesn't have enough from the stipulation or the plea hearing, the court is certainly free to, before entry of judgment on the plea, to assure itself from the PSR that there's a sufficient basis. Clearly, all of this, and clearly what the defendant was pleading to, is a scheme, plan, or pattern intended to cause this 15-year-old to believe that if she failed to perform an act, that there would be physical restraint used against her, or serious harm. I mean, one of the things included is that she's actually sold to another truck driver for $2,000, but he's unpleasant with her or doesn't like her, and he gives her back. So clearly the control, you know, as this girl is being taken far from where she was picked up, from state to state to state to state, it clearly involves something that would lead her to believe that she is under restraint, physical restraint. All right, so let's go then to the sentencing issue. You know, the thing that struck me about the judge saying, look, I've got a responsibility to make sure the probation office is doing a good job in preparing pre-sentence reports. So in connection with the co-defendant, I had looked at the discovery in this case, and I think what's notable about the carefulness of this particular judge in our district is that he had noticed a couple of things of concern to him, and he wanted clarification. And so he asked for clarification, and he got clarification that the two things he was concerned about from the government, as well as the defense, were not founded allegations, that they were unfounded as to this defendant and as to this victim. So basically he clarified that he didn't need to be concerned about those two issues. And I think that just shows the carefulness of the court to then somehow suggest that, oh, he was unduly influenced when he determined that the two things he was concerned about did not apply to this victim and were not founded allegations according to the government. You know, I would think that that works the other way. You know, I think Mr. Skaggs will probably go to it when he gets back up. You know, the only thing, well, there were two things that I saw on the record. I think when the judge used the word pedophile, he simply misspoke. Clearly this is a sexual predator in the means in which he thought about how to get a girl while he's in prison, and he goes out and he executes that plan. That's a predator. And it's a predator whether it's for his own sexual gratification or to sell her and market her. And he does both. And a 15-year-old. So at any rate, there's that. And so I don't think there's anything to the judge having used a word once. It's nowhere else. And he's not making a case about pedophilia at all in the unwarranted disparity in sentencing. Well, it's within the guideline range. And the reality is, is different judges with different defendants, even with seemingly similar crimes and similar circumstances, are going to impose different sentences. And I think the key question, and of course the judge was aware that other judges don't impose life sentences. He doesn't impose life sentences. He didn't in his career. So to suggest that because the judge was upset with the late handing up of exhibits in violation of the rules of his court, that somehow that shows he didn't consider this, I think it is quite unfair. He wouldn't consider the exhibits. Mr. Skaggs was free to argue that a different sentence in life would be an appropriate sentence based on all the people who commit similar crimes who don't get a life sentence. And of course the judge was aware of that. And the judge explained why for this defendant in this case, for for his honor, that that was the appropriate sentence. I think, I think, I don't want to speak for the judge, but I think basically what the judge was indicating, not only general deterrence, but given the fact that this young man planned this crime and then executed this crime while he was serving his prison sentence, and then executed after, indicated a need for specific deterrence that he never be released into society again. Thank you for your attention. Excuse me, your honor, for my lack of courtesy. I've been gone for quite a while and I guess I was a little nervous. Thank you, Mr. Quinley. Anything Just a couple points, your honor. The point of using the PSR to have sufficient basis for the plea, I know the government pointed out the Arundel case. That was a circumstance where the judge had concerns and the PSR was, you know, it listed out extensively the drug traffic involved there. And, you know, this case, the Thompson case, is one sentence, one sentence about this threat. The disparity judge, I know my time is growing short, real quick, we didn't violate any rules. We didn't make the judge happy, but we didn't violate any rules. You know, he didn't like it and it's, sometimes we, you don't please a judge, and I certainly don't want him in that spot again, but we didn't violate his sentencing order. We didn't violate any rules he posted. We asked him to look at some case law, the list that's with our brief, and the one press release. And by doing that, it would have shown that giving Mr. Thompson life would be an unreasonable disparity. Thank you. Thank you, counsel. The case is taken under advisement.